IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Jason A. Milner, et al., | Case No. 2:10-cv-00904 |
| Plaintiffs, | Judge James L. Graham |
| v. | Magistrate Judge King |
| Robin Biggs, et al., | |
| Defendants. | |

**OPINION AND ORDER**

This matter is before the Court upon the Motion for Judgment on the Pleadings (doc. # 27) of Defendants Arrow Title Agency, LLC, Jonathan Holfinger, and Chris Moore. Defendants seek dismissal of six of the seven claims against them, as set forth in Plaintiffs Jason, Natasha, and Lexi Milner's Complaint. For the reasons set forth below, Defendants' motion is hereby **GRANTED** in part and **DENIED** in part.

**I. FACTUAL AND PROCEDURAL BACKGROUND[1]**

This matter concerns the transfer of real property from Defendant Robin Biggs to Plaintiffs Jason and Natasha Milner which occurred sometime in the spring of 2010.[2] Plaintiffs allege that mold appeared in two rooms of the house approximately four weeks after their purchase of the property. (Complaint, Doc. #3, ¶ 29.) According to their Complaint, Defendant Biggs intentionally concealed latent problems with "rotting floor joists, mold remediation, standing water under the home, insufficient depth of the foundation, a complete absence of drainage around the foundation of the house, and other

---

[1] This factual summary is based on allegations in Plaintiffs' Complaint and attached exhibits, all presumed to be true for purposes of evaluating Arrow's motion under Fed. R. Civ. P. 12(b)(6).

[2] Plaintiffs do not state the exact date of the sale, and the final Purchase Agreement is not attached to the Complaint. Instead, a "Real Estate Offer to Purchase Contract" is attached as Exhibit B.

problems." (*Id.* at ¶ 27 – 28.)  Plaintiffs allege, too, that Defendant Biggs misrepresented these problems on the requisite "Disclosure Form" (*id.* at ¶ 27; *see also* Exhibit A, attached to the Complaint) and that Defendant Frank Roberts, the home inspector hired by Plaintiffs, "missed or ignored" the problems with the property (*id.* at ¶ 30).  As a result of the mold, according to Plaintiffs, both Plaintiff Natasha Milner and minor daughter Lexi Milner have developed allergies requiring medical care.

Plaintiffs also claim that Defendants Arrow Title Agency, LLC; Jonathan Holfinger, its president; and Chris Moore, its regional sales manager (collectively, "Arrow" [3]) improperly prepared the General Warranty Deed related to this real estate transaction. Plaintiffs allege that the General Warranty Deed should have transferred the property to Plaintiffs Jason Milner *and* Natasha Milner; instead, it transferred the property to Jason Milner only.

Before the Court is Arrow's Motion for Judgment on the Pleadings.  Arrow seeks dismissal of Plaintiffs' request for injunctive relief against Defendant Angela Shanks to permanently restrain her from "steering" customers to Arrow for title services (First Claim).  In addition, Arrow seeks dismissal of six claims: violation of Ohio's Consumer Sales Practices Act (Second Claim); negligence (Third Claim); negligent misrepresentation (Fourth Claim); civil conspiracy (Sixth Claim); unjust enrichment (Twelfth Claim).  Arrow

---

[3] In the Complaint, Plaintiffs inconsistently refer to the Arrow Defendants.  For example, some claims are alleged against Defendant Holfinger, others against Defendant Moore, and still others against Defendant Arrow Title.  Determining which claims are actually alleged against each (or all) of the particular "Arrow Defendants" is not necessary to this Court's determination of the instant motion.  Therefore, this Court will refer to the Arrow Defendants collectively as "Arrow" in its analysis of all claims alleged against any Arrow Defendant.  The result is the same.

does not seek dismissal of Plaintiffs' Eleventh Claim, which alleges violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*[4]

Plaintiffs originally filed suit in Pike County, Ohio Common Pleas Court, and the action was removed to federal district court, pursuant to 28 U.S.C. § 1441. (Doc. # 1.) This Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

## II. STANDARD OF REVIEW

Motions for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) are evaluated in much the same way as Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief may be granted. *See E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001); *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). The purpose of a motion under either rule is to test the sufficiency of the complaint. A complaint need not set down in detail all the particularities of a plaintiff's claim. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1950 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("A formulaic recitation of the elements of a cause of action" is not enough). The complaint "must contain either direct or inferential allegations respecting all the material elements to

---

[4] This Court's Opinion and Order does not reach the issue of whether Plaintiffs state a claim under RESPA, as that issue is not before the Court at this time. However, as Plaintiffs allege that "Defendants Shanks and/or Brenda DePugh violated RESPA by accepting fees, kickbacks, or things of value . . . with [sic] Defendant Arrow" (Complaint, ¶ 161), this claim potentially implicates Arrow. Arrow does not seek dismissal of this claim.

3

sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (emphasis in original).

Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949-50. The factual allegations must show more than a possibility that the defendant acted unlawfully. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 1949 (quoting *Twombly*, 550 U.S. at 557).

When considering a motion for judgment on the pleadings, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *See Grindstaff*, 133 F.3d at 421. Even so, it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *Id*. The Court will, however, indulge all reasonable inferences that might be drawn from the pleading. *See Fitzke v. Shappell*, 468 F.2d 1072, 1076-77 n.6 (6th Cir. 1972).

### III. LAW AND ANALYSIS

In their Complaint—in the "Common Facts" section and throughout the claims for relief—Plaintiffs allege facts against Arrow only with regard to Arrow's preparation of the General Warranty deed and "other closing documents."[5] Plaintiffs allege no facts against Arrow with regard to the allegedly concealed mold and related problems.

---

[5] In the "Common Facts" section of the Complaint, Plaintiffs allege only the following against Arrow: "Defendants [Angela] Shanks and Brenda DePugh recommended the title agency, Defendant Arrow, to the [Plaintiffs] and led [Plaintiffs] to believe that Defendant Arrow would provide competent services." (Complaint, ¶ 20.) In total, Plaintiffs allege only that Arrow "maintains a Waverly[, Ohio] office in the same building as Defendant Shanks"; Arrow "fail[ed] to provide executed copies of all documents signed or initialed by Plaintiffs"; Arrow "failed to prepare the closing documents in accordance with the Purchase Contract"; Arrow "failed to include the names of both" Jason and Natasha Milner on the General Warranty Deed; and Arrow was allegedly involved in a kickback or fee scheme with Defendants Shanks or Brenda DePugh. (*Id.*, ¶¶ 41, 57, 59, 77, 161.)

4

With regard to Plaintiff's First Claim for Relief ("Application for Injunctive Relief"), because Arrow is not a party to that claim—Plaintiffs seek to enjoin *Defendant Shanks* from sending business *to* Arrow—Arrow's motion with regard to this claim is **MOOT.**

In their Sixth and Twelfth Claims for Relief Plaintiffs do nothing more than provide rote allegations against Arrow, offering no factual allegations to support these claims that arise out of the mold-related allegations. Under *Iqbal* and *Twombly*, a plaintiff must do more than add a defendant to a claim for relief; factual allegations must support each claim, resulting in more than mere conclusory allegations of blame. *Iqbal,* 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 555.

Plaintiffs' Sixth Claim—"Civil Conspiracy"—is bereft of any factual allegations in support. "The elements of civil conspiracy are (1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an unlawful act independent from the conspiracy itself." *Urbanek v. All State Home Mtg. Co.,* 178 Ohio App.3d 493, ¶ 19, 898 N.E.2d 1015 (Ohio Ct. App. 8th Dist., 2008). *See also Kenty v. TransAmerica Premium Ins Co.*, 72 Ohio St.3d 415, 419, 650 N.E.2d 863 (1995). With regard to Arrow specifically, Plaintiffs state only as follows: "Based on information and belief, Defendants [Angela] Shanks, Brenda DePugh[ and] Arrow . . . are working together and steering customers to Defendants' benefit." (Complaint, ¶112.) Plaintiffs fail to allege any facts in support of any of the elements of the claim. Moreover, the action attributed to Arrow in the Complaint—that of incorrectly transferring the property to Jason Milner only instead of to both Jason and Natasha Milner—forms no part of the actions alleged to be part of the conspiracy. As a result, Arrow's motion with regard to the Sixth Claim is **GRANTED.**

5

Similarly, in their Twelfth Claim for Relief—"Unjust Enrichment"—the facts alleged against Arrow do not support the claim.  To state a claim for unjust enrichment, a plaintiff must allege all of the following:  (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.  *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).  Here, Plaintiffs allege that Arrow "was unjustly enriched ***by receiving the fees*** for drafting the general warranty deed which does not have both names of Buyers as required by the [Real Estate Offer to Purchase] Contract."  (Complaint, ¶ 172, emphasis added.)  Plaintiff does not allege that ***they*** conferred any benefit upon Arrow—such as paying for the closing services—only that they conferred a benefit upon the seller, Defendant Biggs, by purchasing the property.  (*Id.*, ¶168.)  By failing to allege an essential element of the claim against Arrow, Plaintiffs do not state a claim of unjust enrichment.  Therefore, with regard to Plaintiffs' Twelfth Claim, Arrow's motion is **GRANTED.**

Left for consideration under Arrow's motion are Plaintiffs' Second, Third, and Fourth Claims for Relief: claims for violation of Ohio's Consumer Sales Practices Act, for negligence, and for negligent misrepresentation, respectively.

### A. Plaintiffs' Second Claim for Relief: Violation of Ohio's Consumer Sales Practices Act Ohio Revised Code Chapter 1345

Plaintiffs, in their Second Claim for Relief, allege that Arrow violated Ohio's Consumer Sales Practices Act ("the CSPA"), Ohio Revised Code Chapter 1345, while performing closing services in the real property transfer between Plaintiffs and Defendant Biggs.  Specifically, Plaintiffs allege that Arrow failed "to provide executed copies of all documents signed or initialed by Plaintiffs" and "failed to prepare the closing documents in

6

accordance with the Purchase Contract." (Complaint, ¶¶ 57, 59.)  In its motion, Arrow argues that the CSPA is inapplicable to the services it performed at issue in this real estate transaction.  This Court agrees.

Ohio R.C. § 1345.02(A) prohibits unfair or deceptive consumer sales practices under the Ohio Consumer Sales Practices Act ("the Act").

> No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

The applicable definitional section of the Act provides in relevant part as follows:

> "Consumer transaction" means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things. . . .
>
> "Supplier" means a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer.

R.C. § 1345.01(A) and (C), respectively.  In *Brown v. Liberty Clubs, Inc.*, the Supreme Court of Ohio noted that the Act "has no application in a 'pure' real estate transaction." 45 Ohio St.3d 191, 192, 543 N.E.2d 783 (1989).  The *Brown* Court did make an exception, however, where the real estate transaction was "inextricably intertwined" with personal property or services.  In that type of situation, the Act applies to the personal property or services portion of such a "mixed" transaction. *Id.* at 195.

Since the Supreme Court's decision in *Brown,* Ohio courts have struggled with what constitutes a mixed transaction in the area of real estate for the purposes of the CSPA.  In *Keiber v. Spicer Constr. Co.*, 85 Ohio App.3d 391, 619 N.E.2d 1105 (Ohio Ct. App. 1992), the appeals court considered what real-estate services fall within the parameters of the CSPA.  The court concluded that although the CSPA "does not apply to isolated, pure real-estate

7

transactions involving the purchase and sale of land and any pre-existing improvements," it does apply to transactions involving a contract to construct a residence. *Id.* at 392 (internal quotation marks omitted). The *Keiber* court differentiated between the sale of land—clearly excluded from the CSPA—and a contract to build a home, comparing favorably the construction contract to other situations in which the CSPA had been applied by Ohio courts: "mobile homes, modular homes, and residential construction goods and services where there was no concurrent purchase of land." *Id.* at 395-96.

> Although there are similarities between the purchase of an existing residence and the purchase of land coupled with a contract for the construction of a residence, there are reasons to distinguish these transactions in light of the purposes of the [CPSA]. The buyer of an existing residence has the opportunity, if not the obligation, to inspect the premises before purchasing them. However, the purchaser of a contract to build a house has no such opportunity; he is dependent upon the integrity and ability of the construction contractor. Because of this distinction, there is a valid reason to extend the protections of the Act to the purchaser of a contract to build a house, even though the Act has been deemed not to apply to the mere purchase of existing real property.

*Id.* at 396. Here, there is nothing in Plaintiffs' claim against Arrow that distinguishes it from a typical purchase of existing real property, and, therefore, the CSPA is inapplicable. *See also Hanlin v. Ohio Builders and Remodelers, Inc.*, 212 F.Supp.2d 752, 757 (S.D. Ohio 2002) (finding that a mortgage lender's closing services were "part and parcel of the real estate transaction," and, therefore, did not fall within the CSPA); *Hurst v. Enterprise Title Agency, Inc.*, 157 Ohio App.3d 133, 144, 809 N.E.2d 689, 2004-Ohio-2307 (11th Dist. Ct. App. 2004) (finding that an escrow agent's services were "collateral" to the real estate transaction, precluding application of the CSPA).

Plaintiffs allege that Arrow "fail[ed] to provide executed copies of all documents signed or initialed by Plaintiffs"; "represent[ed] that title documents were properly prepared, when some documents were not"; "fail[ed] to prepare the closing documents in

8

accordance with the Purchase Contract"; did not take steps "to insure their employees complied with the CSPA"; and "said things" and "made misleading statements of opinion[.]" (Complaint, ¶¶ 57, 58, 59, 60, 67, 68.)  Each of these actions relates directly to the real estate transaction.  Further, nothing in Plaintiffs' allegations relates to the purpose behind the CSPA: "to eliminate overreaching, to eliminate inequality in the positions of seller and buyer, and to equalize access to key information."  *Rose v. Zaring Homes, Inc.*, 122 Ohio App.3d 739, 747, 702 N.E.2d 952 (Ohio Ct. App. 1997).  Plaintiffs allege no facts to support any inference that Arrow over-reached in providing closing services, that Arrow was in a superior position to Plaintiffs with regard to reviewing the closing documents' compliance with the Purchase Agreement, or that Arrow had greater access to key information.

Citing to an unreported Ohio appeals case for the proposition that "[a] title company's failure to provide to homeowners documents required by law at a closing is a violation of the CSPA[,]" Plaintiffs contend that their mere allegation that Arrow "failed to provide documents required by law to Plaintiffs at closing" is sufficient to withstand a motion to dismiss.  (Addendum to Mem. Contra, page 2, citing to *Property Asset Mgt. v. Shaffer,* 2008 WL 4193251, 2008-Ohio-4645 (Ohio Ct. App., Third Dist.))[6]  But there is an important distinction between the facts alleged in *Property Asset* and the lack of facts alleged in Plaintiffs' Complaint.

In *Property Asset*, the Court of Appeals held that the trial court erred in dismissing the plaintiffs' CSPA claims against a title agency, finding that the plaintiffs had "minimally connected [the title agency] with the wrongdoings." 2008-Ohio-4645 at ¶6.  The "wrongdoings" consisted of an alleged fraud perpetrated by the plaintiff's wife, who allegedly caused plaintiff's mentally disabled son to impersonate plaintiff in securing a

---

[6] Plaintiffs submitted *Property Asset Mgt.* in an "Addendum to Plaintiffs' Memorandum Contra, Doc. # 31, filed a few days after their Memorandum Contra and not opposed by Defendants.

second mortgage on plaintiff's property. In his complaint, plaintiff alleged that the title company—along with the lender and real estate agent—misrepresented and concealed facts regarding, *inter alia,* arranging a fraudulent mortgage transaction, participating in the forgery of plaintiff's signature on mortgage documents, and concealing the lien on plaintiff's property. The court found that the complaint "specifies that irregularities in the provision of appraisal, title, closing, and other services existed[,] among other things." *Id.* at ¶ 11. "[The complaint] also states that [the title agency] failed to produce statutorily required documents to [plaintiff] as the home owner." *Id.* The facts of *Property Asset* reflect a number of serious irregularities within the closing process—not merely the failure to produce required documents. This is the type of over-reaching the CSPA contemplates.

Here, though, Plaintiffs only vaguely allege that the Arrow Defendants failed to adequately complete the closing documents—which, even if true, do not fall within the limits of the CSPA. Although Plaintiffs recite CSPA language—alleging that Arrow has "knowingly taken advantage of the inability of Plaintiffs to reasonably protect their interests" because of Plaintiffs' purported inability to understand the real-estate documents involved (Complaint, ¶ 61)—this allegation is so unclear that it is impossible to draw any sufficient inferences that the CSPA was violated.

As a result, Defendants Arrow's motion with regard to Plaintiffs' claim under Ohio's Consumer Sales Practices Act is hereby **GRANTED.**

### B. Plaintiffs' Third Claim for Relief: Negligence

In their Third Claim for Relief, Plaintiffs claim that Arrow acted negligently in the drafting of the General Warranty Deed conveying title from Defendant Biggs to Plaintiffs Jason and Natasha Milner. (Complaint, ¶¶ 74 – 84.) Specifically, Plaintiffs allege that Arrow failed to include the names of both Jason and Natasha; instead, the deed conveys

title to Jason only.[7] Arrow argues that Plaintiffs' claim fails because (1) Plaintiffs failed to allege that Arrow proximately caused Plaintiffs' alleged damages, and (2) Arrow's duty, as alleged, arises out of a contract to which Arrow was not a party. (Motion, pages 8 – 9.) It is fundamental that to state a claim of negligence, a plaintiff must allege a duty, breach of that duty, causation, and damages. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265, 270 (1989). Although Plaintiffs fail to clearly allege that any action by Arrow was the proximate cause of their damages, this Court reasonably infers that Arrow's alleged failure to properly prepare the deed was the cause of Plaintiffs' damages related to that negligence. *Fitzke v. Shappell*, 468 F.2d 1072, 1076-77 n.6 (6th Cir. 1972) ("In judging the sufficiency of the complaint we are bound to indulge in all reasonable inferences which might be drawn therefrom.")

So, too, Plaintiffs sufficiently allege that Arrow owed them a duty: "[Arrow] had a duty of care to transfer the property and prepare the general warranty deed as required by the [Purchase] Contract." (Complaint, ¶ 76.) *See Waffen v. Summers*, 2009 WL 1741731, 2009-Ohio-2940, ¶ 42 (Ohio Ct. App.) (noting that an escrow agent can be held to a standard of ordinary care in its duty to disburse funds) and *Smith v. ABN Amro Mortgage Group, Inc.*, 2007 WL 950334, *7 (S.D. Ohio 2007) (duty can exist without privity of contract for title services). The existence of a duty is ordinarily a question of law. *Mussivand v. David*, 45 Ohio St.3d 314, 544 N.E.2d 265, 270 (1989). The existence of duty depends upon the foreseeabilty of harm: if a reasonably prudent person would have anticipated that an injury was likely to result from a particular act, the court could find that the duty element of negligence is satisfied. *Commerce & Industry Ins. Co.,* 45 Ohio St.3d 96, 543 N.E.2d 1188, 1192 (1989). This Court finds that Arrow owed Plaintiffs a duty to prepare the

---

[7] Plaintiffs did not attach the General Warranty Deed to their Complaint. The only issue with the deed is whether title was conveyed to Jason Milner only, rather than to both Jason and Natasha Milner. This Court accepts Plaintiffs' allegation as true, for the purpose of this Opinion.

closing documents as directed.  *How* Arrow was directed and whether Arrow breached that duty and the issues of causation and contributory negligence are not before the Court at this time.

However, with regard to damages, although Plaintiffs seek damages in excess of $25,000.00 for their claim of negligence, as to Arrow it would seem that the only damages related to this claim could be the costs associated with correcting the deed.  Plaintiffs have not alleged any other damages related to Arrow's actions.

Arrow's motion with regard to Plaintiffs' Third Claim is **DENIED.**

### C. Plaintiffs' Fourth Claim for Relief: Negligent Misrepresentation

In Plaintiffs' Fourth Claim for Relief—"Negligent Misrepresentation"—they allege that Arrow, failing to exercise "reasonable care," misrepresented to Plaintiffs that the General Warranty Deed was correct—and that Plaintiffs "justifiably relied" on these representations.  (Complaint, ¶¶ 96 – 99.)  Inasmuch as Plaintiffs do not state just what was allegedly misrepresented about the deed, presumably they are referring to their contention in paragraph 77 of the Complaint that the deed failed to include the names of both buyers.  Proving reliance on such an alleged misrepresentation may be a challenge if the deed was at the closing and Plaintiffs are able to read.  In any event, the allegations are at least minimally sufficient to state a claim.  Arrow's motion is **DENIED** as to this claim.

### IV.  CONCLUSION

Based on the foregoing, this Court **GRANTS** Defendants Arrow Title Agency, LLC, Jonathan Holfinger, and Chris Moore's Motion to Dismiss for Failure to State a Claim (doc. # 27) with regard to Plaintiffs' Second, Sixth, and Twelfth Claims for Relief.  Those claims

are **DISMISSED with prejudice**[8] as to Defendants Arrow Title Agency, LLC, Jonathan Holfinger, and Chris Moore only.  Defendants' Motion as to Plaintiffs' First Claim for Relief is **MOOT.**  Defendants' Motion with regard to Plaintiffs' Third and Fourth Claims for Relief is **DENIED.**

**IT IS SO ORDERED.**

June 7, 2011                                                              /s/ James L. Graham
                                                                          Judge James L. Graham
                                                                          United States District Court

---

[8] A "dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits,' " and is therefore done with prejudice. *Pratt v. Ventas, Inc.* 365 F.3d 514, 522 (6th Cir. 2004) (citing *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 399 n. 3, (1981)).

13