# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

Jason A. Milner, et al.,

        Plaintiffs,

   v.

Robin Biggs, et al.,

        Defendants.

Case No. 2:10-cv-904

Judge Graham

Magistrate Judge King

## OPINION AND ORDER

This matter is before the court on a motion for sanctions against plaintiffs' attorney filed by defendants Arrow Title Agency, LLC, Arrow's President, Jonathan Holfinger, and its regional sales manager, Chris Moore (collectively "Arrow"). For the reasons stated below, the motion is conditionally granted and additional briefs are ordered related to the amount of sanctions.

## I.     Factual Background

Plaintiffs Jason A. Milner, Natasha M. Milner, and Lexi Milner filed their complaint on September 7, 2010, in the Court of Common Pleas, Pike County, Ohio. (Doc. 3.) The complaint asserted twelve claims against twelve defendants, (nine named defendants and three John Does). (Doc. 3.) The case was removed to this Court on October 7, 2010. (Doc. 1.)

The twelve claims arose from plaintiffs' dissatisfaction with the purchase of a home in Beaver, Ohio. At some point after they moved into the house, they discovered an area under the floor that "appeared to be all rotted" and, in several places, a substance that they believed to be mold. (Doc. 141 at 5.) Plaintiffs subsequently brought suit against a number of parties involved in their purchase of the home. Plaintiffs asserted six of their twelve claims against movants: Claim II for violation of the Ohio Consumer Sales Practices Act ("CSPA"); Claim III for negligence; Claim IV

for negligent misrepresentation; Claim VI for civil conspiracy; Claim XI for violation of the Real Estate Settlement Procedures Act ("RESPA"); and Claim XII for unjust enrichment.

On October 25, 2010, Arrow notified plaintiffs that it believed the claims against it to be frivolous, and that it intended to seek sanctions if forced to incur significant legal expenses. (Doc. 146-1 at 2.) In a letter dated January 11, 2011, Arrow addressed plaintiffs' claims that it had negligently prepared the deed to the plaintiffs' home by preparing the deed to convey the property solely to Jason Milner, not to Jason and Natasha Milner. Arrow attached to the letter a "Draft survivorship deed conveying the Property from Jason A. Milner to Jason A. Milner and Natasha M. Milner." (Doc. 146-2 at 1 (emphasis in original).) As of July 20, 2011, more than seven months later, plaintiffs continued to pursue their claims against Arrow, but had taken no steps to execute and file the survivorship deed. (Jason Milner Dep., Doc. 69-1 at 71-72.)

On February 24, 2011, Arrow moved for judgment on the pleadings with respect to each of the five state-law claims against it, but not on the federal RESPA claim. On June 1, 2011, plaintiffs moved to amend their complaint and to add additional parties. (Doc. 42.) The motion did not include the text of any proposed amendment, but sought leave to amend the complaint after the court ruled on Arrow's pending motion for judgment on the pleadings. Id.

On June 8, 2011, this Court granted-in-part Arrow's motion for judgment on the pleadings. (Doc. 48.) The Court granted Arrow's motion with respect to plaintiffs' CSPA, conspiracy, and unjust enrichment claims and denied it with respect to the negligence and negligent misrepresentation claims. The Court subsequently denied plaintiffs' motion for reconsideration (doc. 58) and plaintiffs' motion to amend the complaint (doc. 54).

On September 27, 2011, after the close of discovery, Arrow moved for summary judgment

2

on the three claims remaining against it. (Doc. 68.) Before the Court had ruled on that motion, the plaintiffs, after more than a year of litigation, moved to dismiss all claims without prejudice. (Doc. 73.) The Court denied the motion to dismiss without prejudice (doc. 85) and plaintiffs moved for summary judgment against Arrow on the negligence and negligent misrepresentation claims. (Doc. 108.) In that motion, plaintiffs' sought "damages in the total amount of the costs associated with correcting the deed." (Doc. 108 at 5.) However, as of July 20, 2011, plaintiffs had taken no action to file the deed provided by Arrow ten months before the summary judgment motion (Doc. 69-1 at 71-72), nor is there any evidence that plaintiffs ever incurred *any* damages in attempting to fix the alleged error in the deed.

On April 6, 2012, the Court granted defendants' motions for summary judgment on all claims against all defendants. (Doc. 141.) In dismissing the RESPA, negligence, and negligent representation claims against Arrow, the Court found that there had simply never been any evidence that there was any agreement or understanding between the real estate agents and Arrow to make any improper kickbacks or payments: "The evidence thoroughly establishes that no such agreement existed." (Doc. 141 at 23.) The court also found a complete absence of evidence of negligence or negligent misrepresentation. (Doc. 141 at 24-25.) Arrow subsequently moved for sanctions, seeking recovery of attorney's fees, costs, and expenses pursuant to 28 U.S.C. § 1927 and "this Court's inherent authority." (Doc. 146 at 1.)

**II.     Legal Standard**

Pursuant to 28 U.S.C. § 1927:

Any attorney or other person admitted to conduct cases in any court of the Untied States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such

conduct.

Sanctions issued under Section 1927 and under the Court's inherent authority "empower the court to command obedience to the judiciary and to deter and punish those who abuse the judicial process." Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater, 465 F.3d 642, 645 (6th Cir. 2006). The purpose of such sanctions is to "deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." Id. at 646. Accord Garner v. Cuyahoga County Juvenile Court, 554 F.3d 624, 644 (6th Cir. 2009). An attorney subject to sanctions under 28 U.S.C. § 1927 is "required to personally satisfy the excess costs attributable to his misconduct." Red Carpet, 465 F.3d at 646.

In addition to its authority under 28 U.S.C. § 1927, this Court "has the 'inherent authority to award fees when a party litigates in bad faith, vexatiously, wantonly, or for oppressive reasons.'" First Bank of Marietta v. Hartford Underwriters Ins. Co., 307 F.3d 501, 512 (6th Cir. 2002) (quoting Big Yank Corp. v. Liberty Mut. Fire Ins. Co., 125 F.3d 308, 313 (6th Cir. 1997)).

**III.   Analysis**

Movants argue that plaintiffs have engaged in three types of sanctionable behavior: pursuing meritless claims with the intent to harass, filing inappropriate motions, and engaging in bad-faith discovery tactics.

*Meritless Claims Brought to Harass*

Arrow argues that each of the claims that plaintiffs brought against it had no factual or legal basis and were brought to harass Arrow "into litigating or settling a meritless, vexatious claim." (Doc. 146 at 11.) Ultimately, the Arrow defendants prevailed on each of the six claims that plaintiffs brought against them. Three claims (CSPA, civil conspiracy, and unjust enrichment) were resolved

in Arrow's favor on its motion for judgment on the pleadings. The remaining three (negligence, negligent misrepresentation, and RESPA) were resolved in Arrow's favor on its motion for summary judgment. Success on the merits does not ordinarily entitle the prevailing party to sanctions. However, movants argue that the claims against Arrow were so frivolous that they should have been resolved early in this litigation when Arrow provided plaintiffs with a survivorship deed with which they could have fixed the alleged error on the deed, and that maintaining the claims after that point only served to unreasonably multiply and delay the litigation.

Three of the claims–negligence, negligent representation, and unjust enrichment–relate to the alleged error in the deed. The CSPA, RESPA, and conspiracy claims each would have required additional improper actions by Arrow. Plaintiffs had no evidence of or reason to suspect that Arrow had violated the CSPA or RESPA, or engaged in a civil conspiracy. There is no evidence of, or even any allegation to support the idea that Arrow "committed unfair, deceptive, and/or unconscionable acts and practices" to support the CSPA claim. (Doc. 3 ¶ 51.) Nor is there any evidence of a kickback or improper payment to support the RESPA claim. Plaintiffs' have admitted as much, candidly acknowledging that the RESPA claim was based on speculation and assumption. (N. Milner Dep., doc. 70-1 at 83, 110, J. Milner Dep., doc. 69-1 at 52-55.) The conspiracy claim against Arrow rested on the sole allegation that Arrow and other defendants were "working together and steering customers to Defendants' benefit." (Doc. 3 ¶ 112.) Like the RESPA claim, plaintiffs had no basis other than pure speculation on which to rest this claim.

The claims against Arrow for negligence, negligent representation, and unjust enrichment at least related to some potentially-real, non-speculative harm. They all arose solely from the fact that Natasha Milner's name did not appear on the deed, only her husband's. Plaintiffs do not allege

and have provided no evidence of any harm arising from the fact that the deed was not how they wanted it, nor are any such harms plausible. Therefore, as the court stated in its order granting-in-part Arrow's motion for judgment on the pleadings, "as to Arrow it would seem that the only damages related to this claim could be the costs associated with correcting the deed." (Doc. 48 at 12.) Yet, very early in this litigation, on January 11, 2011, Arrow provided plaintiffs with a survivorship deed that would solve the problem with the deed. (Doc. 146-2.) The only other possible damages plaintiffs could have suffered at that point from Arrow's negligence or negligent misrepresentation are any costs associated with filing the deed. Yet, more than six months later, Jason Milner testified that he had not filed the survivorship deed, nor had plaintiffs taken any other action to correct the deed. (Doc. 69-1 at 71-72.) Given plaintiffs' refusal to file the deed that would solve the only harm they alleged Arrow to have caused by negligence or negligent misrepresentation, Arrow did everything it could have to make plaintiffs whole when it provided them with the survivorship deed. Any non-frivolous controversy concerning negligence or negligent misrepresentation ended then, and further proceedings served simply to unreasonably multiply the proceedings. Similarly, though this Court held that plaintiffs had stated no claim for unjust enrichment (see doc. 48 at 6), any possible harms stemming from that claim could have been resolved with the survivorship deed.

Because the three claims not directly related to the alleged error on the deed were meritless and served only to multiply the proceedings, and because the negligence, negligent misrepresentation, and unjust enrichment claims became meritless and served only to multiply the proceedings once Arrow had provided a solution to the problem, Arrow is entitled to all attorney's fees, costs, and expenses incurred between January 11, 2011 and this Court's entry of judgment on

April 6, 2012.

*Other Arguments for Sanctions*

In light of the sufficient reasons for imposing sanctions discussed above, it is unnecessary to consider Arrow's other arguments that sanctions are warranted–because plaintiffs engaged in inappropriate motions practice and bad-faith discovery tactics. It is worth noting, however, that plaintiffs *did* engage in unreasonable motions practice that served only to multiply proceedings. For example, Arrow argues that plaintiffs' motions to amend the complaint unreasonably and vexatiously delayed this case. Plaintiffs twice moved to amend their complaint and were twice denied. Plaintiffs first attempted to amend their complaint more than eight months after they filed their complaint. (Doc. 42.) But given the absence of any substantial proposed amendment, it is unclear whether this first motion to amend represents an attempt to delay and multiply the litigation, or simply a poorly executed motion that ended up being entirely content-less due to inadvertence or inexperience. The plaintiffs' second motion to amend sought to add host of new parties and claims not clearly related to the ongoing litigation. (Doc. 93.) This motion came more than a year after the original complaint was filed and more than two months after the close of discovery. Plaintiffs waited six months after they had all the facts relevant to the new parties and claims before moving to amend their complaint. This inexplicable delay and departure from the case schedule can only be characterized as an unreasonable and vexations multiplication of proceedings.

Also more than a year after initiating this litigation and after the close of discovery, plaintiffs filed a motion seeking to dismiss all claims against all defendants without prejudice. (Doc. 73.) This motion presents supporting arguments that are so frivolous that it can only be interpreted as an attempt to secure a do-over, and to start over with litigation against another group of litigants.

7

Finally, in a motion for summary judgment, plaintiffs sought "damages in the total amount of the costs associated with correcting the deed." (Doc. 108.) Evidence in the record demonstrates that plaintiffs had incurred no such costs, there were no such damages, and they had declined to file the survivorship deed provided by Arrow. The summary judgment motion was entirely unreasonable and vexatious.

**IV.    Conclusion**

The decision to grant sanctions under 28 U.S.C. § 1927 lies within this Court's discretion. See Jones v. Continental Corp., 789 F.2d 1225, 1229 (6th Cir. 1986). However, a panel of the Sixth Circuit has suggested that in considering sanctions, this Court "may consider . . . an attorney's ability to pay the sanction, whether the attorney or the client was the cause of the multiplication of proceedings, [and] whether the multiplication was negligent, inadvertent, malicious, reckless, or intentional." Stephens v. Freeman-McCown, No. 99-3048, 1999 WL 993870, at *4 (6th Cir. Oct. 19, 1999) (citing Reynolds v. Humko Prods., 756 F.2d 469, 473 (6th Cir. 1985)). With these considerations in mind and based on the foregoing reasons, Arrow's motion for sanctions (doc. 146) is conditionally GRANTED. Plaintiffs' attorney shall be personally liable to the movants for all attorney's fees, costs, and expenses incurred between January 11, 2011 and April 6, 2012. Movants shall file a claim for attorney's fees, costs, and expenses together with a supporting affidavit and itemized billing records (indicating the billing rate, number of hours, and description of the work performed) and a brief regarding the factors discussed above, relating to the amount of sanctions to be awarded, on or before November 1, 2012. A responsive brief from plaintiffs' counsel shall be filed on or before November 16, 2012, and any reply by movants is due on or before December 3, 2012.

IT IS SO ORDERED.

                                              S/ James L Graham
                                              James L. Graham
                                              UNITED STATES DISTRICT JUDGE

Date: October 2, 2012